UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) Docket No.: 24-cr-10035-JEK |
| | ) |
| | ) |
| HAN LEE | ) |

## DEFENDANT'S SENTENCING MEMORANDUM

Born into an impoverished family in South Korea, Ms. Lee's father drank heavily and was both physically and emotionally abusive. Ms. Lee's mother suffered the most, refusing to leave her husband and working constantly to keep the family afloat. As Ms. Lee came of age, she realized that her mother was also severely depressed. Suffice it to say, Ms. Lee's childhood was not a happy one. She dreamed of escape, of starting a new life elsewhere, of self sufficiency.

Approximately ten years ago, circumstances allowed for her to try. Ms. Lee came to the United States to visit California. Within the South Korean immigrant community, she met women who were engaging in commercial sex work. The women made good money and were able to support themselves. Ms. Lee found this appealing and began engaging in sex work herself. Work was readily available in brothels throughout the country. Ms. Lee spent time working in California, Las Vegas, and New York before ultimately settling in Massachusetts.

After living and working in Massachusetts for several years, an opportunity arose for Ms. Lee to adopt a different role in the industry. A strikingly similar brothel operation also operating

1

in the area had been raided and prosecuted, leaving a void in the marketplace.[1]  Ms. Lee stepped into that void and followed the same playbook, establishing websites, renting apartments, and generally overseeing the operation—all the while continuing to engage in commercial sex work herself.

In so doing, she engaged in a conspiracy to solicit and entice women to travel for the purpose of engaging in prostitution in violation of 18 U.S.C. § 371.  Furthermore, she took the profits from her activities and concealed them through a variety of financial transactions in violation of 18 U.S.C. § 1956(h).  Ms. Lee accepts responsibility for her conduct and has pleaded guilty.  As will be discussed below, there is a dispute as to the application of the sentencing guidelines and whether Ms. Lee was an organizer and leader of a money laundering conspiracy involving five or more participants within the meaning of USSG § 3B1.1(c).  Regardless of how the Court resolves that dispute, the Defendant contends that a sentence of 30 months imprisonment is "sufficient, but not greater than necessary" to accomplish the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

## The Offense

The presentence report lays out the nature of the offenses in this case in exhaustive detail.  For several years, Ms. Lee operated several brothels in Cambridge, Watertown, and eastern Virginia.  In the course of doing so, Ms. Lee coordinated the travel and transportation of women to work in the brothels.  The business operated using websites advertising the women and employed a client verification process requiring that clients provide personal identifying information and employer references.  The business was highly profitable and generated millions

---

[1] See *United States v. Yoon Kim*, 18-cr-10396-WGY; *United States v. Taehee Kim*, 18-cr-10397-DPW; *United States v. Susan Bashir,* 18-cr-10188-ADB; *United States v. Jineok Kim*, 18-cr-10189-RWZ, *United States v. Kyung Song*, 18-cr-10217-DPW, discussed *infra* at 6.

of dollars in revenue over the course of several years. Much of the revenue was then used to promote the enterprise—payments to the sex workers, rent for the apartments, travel expenses, etc. Ms. Lee also engaged in a variety of other financial transactions with her share of the proceeds. That general summary notwithstanding, there are several aspects of the facts and circumstances of the case which the defense believes are salient in the Court's sentencing analysis under 18 U.S.C. § 3553(a).

First, Ms. Lee was herself a sex worker. The presentence report reflects Ms. Lee worked as a sex worker herself for years before beginning to operate brothels herself. This is not merely Ms. Lee's account and she did not cease taking clients when managing the brothels. One witness familiar with the brothels' operations testified that Ms. Lee was a sex worker and had seen clients under two stage names. Similarly, another witness testified that Ms. Lee had been advertised on the websites in the same manner as other women working in the brothels.

Additionally, none of the commercial sex workers encountered by law enforcement at the time the brothels were raided raised any complaints about their treatment by Ms. Lee. In contrast to the mine run of cases involving the interstate commercial sex trade, the absence of any coercion or exploitation on Ms. Lee's part is notable. Indeed, the evidence demonstrates that Ms. Lee (herself a sex worker) sought to operate the business in such a manner as to ensure the safety of all involved. The vetting process for clients served to ensure the safety of the women performing the work. The women were advised that they were free to decline to perform services, retaining access to their identifications and travel documents.

And significantly, it was the workers themselves who kept the majority of the profits generated by the business. The presentence report, which adopts the statement of offense conduct provided by the government, notes that the portion of the proceeds kept by the women

"exceeded 50%." PSR, ¶ 23. This is technically true, but it would be more accurate to state that the split was often much larger.

One witness reported that the price for certain services ranged from $460 to $540 per hour, with Ms. Lee receiving $110. Another reported that a 1 hour service cost $300 and half-hour service cost $250, with Ms. Lee receiving $100 and $80 respectively. A third reported her hourly rate to be $340 and the half-hour rate to be $240, with Ms. Lee receiving $90 and $60 respectively. A fourth witness recounted that she charged between $150-300 for services, with Ms. Lee collecting between $50 to $80. Still another reported charging clients $350 per hour, with Ms. Lee receiving either $100 or $110, depending on the brothel location. Thus, although the women may have billed at different rates for different services, Ms. Lee's cut typically did not exceed one-third of the proceeds. The lion's share of the profits was retained by the sex workers themselves.

Dispute as to Application of USSG §3B1.1(a)

A dispute exists as to whether Ms. Lee was an organizer or leader as to the money laundering conspiracy such that an additional four levels are added to the offense level under USSG §3B1.1(a).[2] This provision applies where the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The indictment names only Ms. Lee and two codefendants as participants in the money laundering conspiracy. To the extent that the relevant conduct contained in the presentence report includes information as to financial transactions between Ms. Lee and various third parties, there has been no showing that the identified third parties were aware that the funds involved represented the

---

[2] Ms. Lee concedes she was an organizer or leader as the prostitution conspiracy. However, because the operative guideline for sentencing purposes is USSG § 2S1.1 and arises out of the money laundering conspiracy, the relevant inquiry is whether Ms. Lee qualifies for a role adjustment in that offense.

proceeds of illegal activity. As such, any such third parties are not participants within the meaning of this provision. See Application Note 1 (limiting the definition of participant to a "person who is criminally responsible for the commission of the offense but need not have been convicted"). Because Ms. Lee's role in the money laundering conspiracy did not involve five or more participants and was not otherwise extensive, §3B1.1(c) applies and there should be only a two-level increase to the offense level. Were the Court to adopt Ms. Lee's position, the total offense level would be 22 and the corresponding guidelines sentencing range would be 41-51 months.

Even if the Court disagrees and applies the adjustment, the defense submits that the rationale underlying USSG §3B1.1 finds little support in the facts and circumstances of this case. The Application Note background provides:

> "This adjustment is included primarily because of concerns about relative responsibility. However, it is also likely that persons who exercise a supervisory or managerial role in the commission of an offense tend to profit more from it and present a greater danger to the public and/or are more likely to recidivate. The Commission's intent is that this adjustment should increase with both the size of the organization and the degree of the defendant's responsibility."

None of these considerations apply to Ms. Lee. She did not profit more from the criminal activity than other participants. In fact, her share of the profits was only around 30%. Moreover, nothing in Ms. Lee's background suggests she presents a particular danger to the public or is at heightened risk of recidivism.

The Application Notes also supply a list of factors to consider in distinguishing the leadership/organizational role adjustment (a 4 level upward adjustment) from one of mere management or supervision (a 2 level adjustment). USSG §3B1.1, App. Note 4. This list includes several factors which would seem to weigh against such a finding with respect to Ms. Lee, including "the claimed right to a larger share of the proceeds" and "the degree of control

5

and authority exercised over others." To the extent that the Court adopts a role adjustment under USSG §3B1.1, the Defendant suggests that a two level adjustment is more consistent with Ms. Lee's role, in that she managed the operations brothels but did not exercise authority over the women or keep a larger share of the profits.

Argument

In the end, the Court's task is not guideline arithmetic, but fashioning a fair and just sentence for those crimes. In so doing, the Court must weigh the nature of her crimes alongside Ms. Lee's personal history and characteristics. Neither of those factors weighs in favor a particularly harsh sentence. While cases involving prostitution often involve some degree of force or coercion exerted against the women involved, this case does not. There is a world of difference between Ms. Lee—a sex worker herself—and a pimp (or madam) who enriches themselves at the expense of those performing the work. The commercial sex workers in this case were well treated and well compensated. Ms. Lee also took steps ensure that the business was run safely. There are no particularly aggravating circumstances to her conduct.

On the other hand, Ms. Lee's personal background merits some sympathy. She is not someone who simply elected to profit off of the labor of sex workers. She is a sex worker herself, with all the lived experience and trauma associated with that history. After enduring poverty and domestic violence during her childhood in South Korea, she came to the United States and entered the sex trade. Her work allowed her to become financially independent and support herself. She has no other criminal history.

Her personal history and background do not suggest that an especially lengthy sentence is necessary to deter her from future crimes. There is no evidence she is a dangerous person who the public must be protected from. A sentence of 30 months to federal prison is substantial and

in keeping with the nature of the offense, as well as her status as a first-time offender. Furthermore, as a non-citizen, she faces removal from the United States and will remain in immigration custody for an indeterminate period of time pending deportation at the conclusion of her criminal sentence.

Finally, the Court is required to also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). The presentence report includes JSIN data reflecting that the average length of imprisonment for defendants falling under the same guideline, offense level, and criminal history category as Ms. Lee was 39 months, with a median sentence of 42 months. While this is generally reflective of sentencing courts imposing below-guidelines sentences for similar conduct, the defense acknowledges its utility is limited here. The applicable guideline used to generate this data (§2S1.1) covers all types of money laundering. As a result, the JSIN is reflective of nationwide data in money laundering cases, but not necessarily money laundering cases involving the same type of illegal activity present here.

Nonetheless, the Court does not write upon a blank slate in that regard. Approximately five years before Ms. Lee was charged in this matter, a strikingly similar brothel network was prosecuted in this District. The case involved the operation of an interstate prostitution network with multiple brothels operating for years in high-end apartments in Cambridge, eastern Virginia, and Atlanta. The sex workers were advertised on websites and the business employed a client verification system of the type used here. Proceeds were laundered via money order purchases and cash deposits to conspirator accounts. The sentences for those defendants are summarized in the chart below:

| DEFENDANT | DOCKET NO. | ROLE | SENTENCE |
|---|---|---|---|
| Yoon Kim | 18-cr-10396-WGY | Leader | 20 months |
| Taehee Kim | 18-cr-10397-DPW | Leader | 12 months + 1 day |
| Susan Bashir | 18-cr-10188-ADB | Client screening, appointment scheduling | 45 days |
| Jineok Kim | 18-cr-10189-RWZ | Driver (also laundered proceeds through cash deposits, purchases of money orders) | 3 months |
| Kyung Song | 18-cr-10217-DPW | Driver (also laundered proceeds through cash deposits, purchases of money orders) | Time Served |

  As the operator of the brothels, Ms. Lee is similarly situated to the married couple, Yoon Kim and Taehee Kim, responsible for the brothel network in the earlier case. In light of the sentences imposed on those defendants, the proposed sentence of 30 months here creates no unwarranted disparity.

Conclusion

For the foregoing reasons, Han Lee requests that the Court sentence her to a period of imprisonment of 30 months. She takes no position as to the imposition of supervised release but notes that the Guidelines discourage its use where the defendant is likely to be deported. USSG § 5D1.1(c). She asks the Court to impose no fine, as her assets were seized and she lacks the ability to pay. She does not object to the government's motion seeking forfeiture in the amount of $5,418,572.

Respectfully submitted,
HAN LEE
By her Attorney,

*/s/ Scott Lauer*
Scott Lauer, BBO# 667807
Assistant Federal Public Defender
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Telephone 617-223-8061

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 14, 2025.

*/s/ Scott Lauer*
Scott Lauer